UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-20277-CR-JORDAN/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAURICE DANIELS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS IN AND OUT OF COURT IDENTIFICATION

Defendant, Maurice Daniels ("Daniels") has filed a Motion to Suppress In and Out of Court Identification [DE 45]. The government has filed a response [DE 58], and Daniels has filed a reply [DE 60]. The Honorable Adalberto Jordan has referred the motion to me for a Report and Recommendation [DE 62]. For the reasons set forth below, I recommend that the motion be denied.

### I. BACKGROUND[1]

On September 24, 2007, a security guard at Sawgrass Mills Mall in Sunrise, Florida was approached by two men as he picked up money from businesses in the mall. One man approached the guard from the front and pointed a gun at the guard's face. The second man approached from behind and placed a gun against the guard's head. The two men took a bag

---

[1] The factual allegations summarized here are taken from the Government's Response memorandum [DE 58, p. 1-2], and the Complaint [DE 3].

containing approximately $70,000 in cash from the guard. The guard described the two men as follows:

> Suspect #1 – black male, 25-30 YOA, 6'0, 190 lbs, thin build with a goatee, wearing a dark long sleeve shirt, black pants, black ball cap, black sunglasses with white rims.
>
> Suspect #2 – black male, 18-22 YOA, 5'6, 150 lbs, thin build, dark shirt, 3/4 jean shorts, sunglasses.
>
> Both suspects were African American and had no accents, no gold or any missing teeth.[2]

On May 5, 2008, a guard at Westfield Mall in Hialeah, Florida, was approached from behind by two men as the guard picked up money from businesses in the mall. One man grabbed the guard's neck; the other pointed a gun at the guard's head. The men took a bag containing approximately $63,000 from the guard.

In 2009, a cooperating witness ("CW") identified three individuals as having participated with her in the robberies; she identified Daniels, along with Defendants Emmanuel Maxine ("Maxine") and Dwight Carter ("Carter"). The CW stated that after the robbery at the Westfield Mall, she, Carter, and Daniels went to an automobile repair shop where Daniels used money from the robbery to pay for car repairs. Investigators presented a six-person photographic line-up to the guard from Sawgrass Mills, the guard from Westfield Mall, and to an employee from the automobile repair shop. The guard from Westfield Mall was unable to identify the subject, but the guard from Sawgrass Mills and the

---

[2] This description comes from a redacted copy of the police report, attached to the government's response as Exhibit 1. [DE 58-1].

2

repair shop employee both picked Daniels out of the line-up.

Daniels moves to suppress the out-of-court identification on the ground that the photo line-up is impermissibly suggestive, and that the identification therefore is unreliable. He further moves to suppress any in-court identification on the basis that it would be tainted by what he believes was an improper out-of-court identification.

## II. LEGAL STANDARD

The Eleventh Circuit has adopted a two-step process to determine whether an out-of-court identification violates the Due Process Clause, and therefore should be suppressed. First, a court considers "whether the original identification procedure was unduly suggestive." *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987). If the court concludes that the procedure was not unduly suggestive, the inquiry ends. *Id.* at 1021. If, however, the court concludes the procedure was unduly suggestive, it then considers "whether, under the totality of the circumstances, 'the identification was nonetheless reliable.'" *United States v. Brown*, 441 F.3d 1330, 1350 (11th Cir. 2006) (quoting *United States v. Diaz*, 248 F.3d 1065, 1002 (11th Cir. 2001)). In making this determination, a court considers the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *United States v. Diaz*, 248 F.3d 1065 (11th Cir. 2001).

Here, an examination of the photo-array leads to the firm conclusion that it was not impermissibly suggestive; therefore I do not reach the second step of this analysis.[3]

### III. ANALYSIS

Daniels gives three reasons why he thinks the photo line-up was impermissibly suggestive. First, Daniels correctly points out that his photograph is the only one in the line-up in which the subject does not have a mustache. The other five men do have mustaches, while Daniels has no visible hair on his upper lip. However, of the five mustachioed men, two have extremely thin mustaches, one of which is almost invisible, two have moderately thin mustaches, and only one has a relatively thick mustache. All six men, including Daniels, have closely trimmed dark facial hair on the chin and jaw.

In *Cikora v. Dugger*, the Eleventh Circuit examined the suggestibility of a photo line-up where one subject had facial hair different than others. 840 F.2d 893 (11th Cir. 1988). The court described the six men in the line-up as follows: "All of the photos showed white males; four showed men with full moustaches, one showed a man with a goatee and sparse moustache, and the photo of Cikora showed only a sparse moustache." *Id.* at 894. The court determined that the variety of facial hair in the line-up did not render the line-up impermissibly suggestive, stating, "[a]ll the men depicted had some facial hair. Although

---

[3] The government filed a copy of the photo-array as an exhibit to its response memorandum. [DE 58-1]. That copy was electronically scanned, and lacking in some detail and clarity; therefore I ordered the government to deliver to chambers a color copy of the photo-array. [DE 61]. The government did so [DE 63], the quality of what it delivered is very good and that is what I have used in this analysis.

Cikora's moustache in the picture is sparse, it is definitely noticeable. Indeed Cikora's moustache is not significantly less noticeable than that of one of the other men." *Id.* at 897.

The differences in facial hair in *Cikora* are greater than those in this case, yet the court nonetheless found that because all the men had some facial hair, and because the defendant's mustache was comparable to another individual in the line-up – even though that man also had a goatee, which the defendant did not – the facial hair variations did not render the photo line-up impermissibly suggestive.[4]

In this case, the guard from Sawgrass Mills described the defendant as "thin build with a goatee,"[5] among other characteristics. The beards in question on the six men are all close cropped, and the upper cheeks are clean-shaven. The beards range from sparse to moderate in thickness, with Daniels falling in the middle. While Daniels is the only one with no mustache at all, two of the men have extremely thin mustaches, with one virtually unnoticeable. Given that slight variation, I cannot say that the lack of a mustache on Daniels renders the line-up impermissibly suggestive.

Daniels next argues the line-up was impermissibly suggestive because Daniels has lighter skin than the other black males in the line-up. I cannot agree. While Daniels' skin

---

[4] The *Cikora* court cited a case from the Tenth Circuit where facial hair was also at issue in a photo line-up: *United States v. Shoels*, 685 F.2d 379 (10th Cir. 1982). In *Shoels*, the witness described the suspect as being clean-shaven, but the photo line-up included six men, all of whom had facial hair. The court found the line-up was not impermissibly suggestive, as it depicted six men with similar features, and each with noticeable but slight facial hair. *Id.* at 385.

[5] A "goatee" is generally defined as "small pointed beard." *See, e.g.*, Merriam-Webster's Online Dictionary, at www.merriam-webster.comdictionary/goatee; Macmillan Dictionary, at www.macmillandictionary.com/dictionary/american/goatee.

tone possibly is the lightest of the men pictured, it is not clear whether this slight difference is due to the subtle differences in the lighting of the photos. More to the point, none of the men in the line-up are particularly dark-skinned. In *Williams v. Weldon*, the court rejected the defendant's argument that a line-up was impermissibly suggestible where the defendant was the only African American in the line-up. 826 F.2d 1018 (11th Cir. 1987). The court stated:

> Although Williams technically was the only black man in the lineup, the other members of the group all had similar skin tone and facial characteristics. The group was similar in appearance to the generally consistent descriptions of the robber given by the various witnesses, *i.e.*, a Mexican, Puerto Rican, Hispanic, or light-complexioned black man. We agree with the magistrate's conclusion that simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features as the accused.

*Id.* at 1021. In *Cikora v. Dugger*, the defendant was a white male with light brown hair and dark eyes. 840 F.2d at 894. The court found the photo line-up proper in spite of the fact that at least one, and possibly other men in the line-up, appeared to be Hispanic. Quoting *Williams*, the court held:

> we reject Cikora's suggestion that the photo array was suggestive because three other photos show males of Hispanic background. Although the man pictured in one photo appears to be Hispanic, the others do not necessarily show Hispanic men.

*Id.* at 897. Similarly in *United States v. Anderson*, the court explained that "although the men pictured do not have uniform skin color, they do seem to be racially similar, and we have held, 'simply being of a different race or ethnic group from others placed in a lineup does not

6

necessarily make that lineup impermissibly suggestive, especially where . . . the other individuals in the lineup had roughly the same characteristics and features as the accused.'" 156 Fed. Appx. 218, 221 (11th Cir. 2005). Here, there is no question that all the men in the line-up are of African American descent. The slight variations of skin tone among the six men is not enough for the Court to conclude that the line-up is impermissibly suggestive.

Cases in which courts have found line-ups impermissibly suggestive involve far greater differences in appearance. In *United States v. Gidley*, 527 F.2d 1345, 1350 (5th Cir. 1976), the court found a photo line-up impermissibly suggestive where the two defendants had long black hair and dark complexions. The photo line-up consisted of five photographs: the two defendants, with their long dark hair and dark skin; two men with long red hair and fair complexions; and one bald man with a dark complexion. *Id*. The court found that because none of the other men pictured in the line-up resembled the defendants, the line-up would lead a witness to choose the defendants: "[a]nyone who had gotten only a glimpse of two robbers with long black hair would have found only Gidley's and Williams' pictures in this group to resemble those robbers." *Id*. In *United States v. Bice-Bey*, 701 F.2d 1086, (4th Cir. 1983), a line-up was deemed impermissibly suggestive where only one of six photographs showed a woman with dredlocks, wearing a head covering. The court stated, "[w]e agree with Bice-Bey that, in light of the fact that Maloney remembered the woman's appearance as unusual, it was suggestive to show Maloney only one photograph, that of Bice-Bey, portraying a woman with dred locks and a head covering." *Id*. at 1090 n. 3.

In this case, the men all appear to be of a similar age, with similar but slightly varying complexions. All have comparable facial hair in varying degrees of density. All six men have close-cropped or corn-rowed hair, with a small pig-tail showing at the neck. The men have similar facial expressions, and five of the men – including Daniels – are wearing white shirts. Three photographs have a pale gray background, while three have a pale greenish background, and there is no significant difference in lighting among the photographs.[6] The similarities are considerable, and the differences slight between Daniels and the other five men in the line-up. Considering all aspects of the photo line-up, I do not find it impermissibly suggestive.

Finally, Daniels argues that because his photograph is the last in the group of six, the line-up is impermissibly suggestive. Each witnesses viewed a single page with six photographs: two rows of three photographs each. Daniels's photograph is positioned on the bottom right. In a line-up of six photographs arranged in this fashion, Daniels could argue that any one of the six possible placements could lead a witness to choose his photograph. If it were in the top left, for example, he could argue that he is first; if it was in the center of either row, he could argue that the central position draws attention.[7] If it were

---

[6] *See, e.g., United States v. Saunders*, 501 F.3d 384, 390 (4th Cir. 2007) (holding a photo line-up impermissibly suggestive where the defendant's photo was strikingly different because it had a darker background and no overhead lighting, which caused this photo to stand out, and created a sinister appearance of the defendant).

[7] In fact, numerous cases involve defendants arguing that their photograph's placement in the number 2 position – top row, center – or in the number 1 position – top row, left – rendered the line-ups impermissibly suggestive. Courts have disagreed. *See, e.g., United States v. Burdeau*, 168 F.3d 352, 357 (9th Cir. 1999) (photo array with defendant's photo in the center not impermissibly

in top right or bottom left, the photograph is still first or last in its row. With an arrangement of three photographs in two rows, there is simply no dominant position. If Daniels's photo had been last in a series of twenty, or fifty, photographs, or if the photos had been viewed one at a time rather than on a single sheet, there might be some merit to his argument.[8] As it stands, however, the placement of a defendant's photograph in any position in a six photo line-up cannot reasonably render a line-up impermissibly suggestive. Accordingly, I do not find that the placement of Daniel's photograph in the number six position can stand as a basis to suppress the witnesses' identification of him from the line-up.

Because I find the photo line-up is not impermissibly suggestive on its face, I need not consider the five reliability factors, but instead, end the inquiry here. *Williams v. Weldon*, 826 F.2d at 1021. Accordingly, I recommend that Daniels's motion to suppress be denied.[9]

## IV. RECOMMENDATIONS

For the foregoing reasons, this Court respectfully recommends that Daniels's Motion to Suppress [DE 45] be **DENIED**.

---

suggestive); *Taylor v. Evans*, 2009 U.S. Dist. LEXIS 33770 at *14-16 (E.D. Cal. Apr. 20, 2009) (court disagreed with defendant who claimed that his photograph's position in the top row, center, rendered the line-up impermissibly suggestive); *United States v. Saenz*, 286 Fed. Appx. 166, 169-70 (5th Cir. 2008) (photo placed in top left did not render line-up unduly suggestive).

[8] Notably, the Eleventh Circuit has held that where a defendant's photo was placed first in a line-up of 26 men, the position was not impermissibly suggestive. *United States v. Anderson*, 156 Fed. Appx. 218, 221 (11th Cir. 2005).

[9] Because the photo line-up is not impermissibly suggestive, the out-of-court identification based on that line-up should be permitted. Because the out-of-court identification is proper, it cannot taint any in-court identification, which should also be permitted.

Pursuant to Magistrate Rule 4(a), the Defendant may file written objections to this Report and Recommendation with the Honorable Adalberto Jordan **no later than August 25, 2010**, and the government may file a response to any objections **no later than September 1, 2010**. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers in Miami, Florida, this 12th day of August, 2010.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Adalberto Jordan
Counsel of record